505 F.2d 1170
 CHIM MING, Appellant,
v.
Sol MARKS, as District Director of the Immigration and
Naturalization Servicefor the District of New
York, and William P. Rogers, as
Secretary of State ofthe
United States of
America,
Appellees.
LAM YIM YIM et al., Appellants,
v.
Sol MARKS, as District Director of the Immigration and
Naturalization Servicefor the District of New
York, Appellee.
 Nos. 43, 75, Dockets 74-1280, 74-1281.
 United States Court of Appeals, Second Circuit.
 Argued Sept. 23, 1974.
Decided Nov. 8, 1974.
 
 Jules E. Coven, New York City, for appellants.
 Joseph P. Marro, Asst. U.S. Atty. (Paul J. Curran, U.S. Atty., for the Southern District of New York, Gerald A. Rosenberg, Asst. U.S. Atty., of counsel), for appellees.
 Before LUMBARD, FEINBERG and OAKES, Circuit Judges.
 PER CURIAM:
 
 
 1
 These consolidated appeals raise essentially the same question: whether appellants, assumed arguendo to be refugees within Article 1 of the 1951 Geneva Convention Relating to the Status of Refugees (the Convention),[1] are entitled to protection by virtue of Article 32. Article 32 of the Convention provides that:
 
 Expulsion
 
 2
 1. The Contracting States shall not expel a refugee lawfully in their territory save on grounds of national security or public order.
 
 
 3
 Appellants are citizens of the People's Republic of China who had left Mainland China for Hong Kong several years before coming to the United States. Both are seamen, having Hong Kong seaman's documents, and were permitted to enter this country only as nonimmigrant crewmen. As such they were authorizd to remain in the United States only for a period not to exceed 29 days under 252 of the Immigration and Nationality Act, 8 U.S.C 1282. Both appellants deserted their ships in the United States and overstayed the 29-day period. Both were apprehended by officers of the Immigration and Naturalization Service, given deportation hearings and were found to be deportable to Hong Kong. Neither appealed the finding. Both remain in the United States.
 
 
 4
 The United States District Court for the Southern District of New York, Robert L. Carter, Judge, held that appellants were not 'lawfully' in the United States under the clear meaning of Article 32 of the Convention, supported by the history of the treaty, its legislative history in the Senate, court rulings and the plain language of the words in question. Thus Article 32 affords no protection to the appellants, even if they are refugees. We agree with Judge Carter, whose careful opinion below, Chim Ming v. Marks, 367 F.Supp. 673 (S.D.N.Y.1973), we rely upon and adopt. His opinion in turn finds support in and relies upon Kan Kam Lin v. Rinaldi, 361 F.Supp. 177 (D.N.J.1973), aff'd, 493 F.2d 1229 (3d Cir. 1974) (per curiam), petition for cert. filed, 42 U.S.L.W. 3693 (U.S. May 15, 1974) (No. 73-1710).
 
 
 5
 Denying the applicability of Article 32 in these cases is also supported by Article 31[2] of the Convention, relating to refugees unlawfully in the country of refuge, which characterizes such refugees as those persons who 'enter or are present in their territory without authorization.' Under Article 31 it is possible that the status of a refugee who has entered illegally the territory of a contracting state may subsequently be regularized. Conversely, the stay of a refugee who has entered in a regular manner may subsequently become unlawful as here, where appellants were admitted for a limited period only. Thus, the only rational interpretation that can be placed upon the term 'lawfully in their territory' in Article 32 is one consistent with the definition of unlawfulness in Article 31 as involving the status of being in a nation 'without authorization.' Since a nation's immigration laws provide authorization, one unlawfully in the country is in violation of those laws.
 
 
 6
 We need only add that Judge Carter's interpretation of Article 32 by no means makes the treaty a nullity and without benefit to refugees. There is protection under Subsection 2 of Article 31 insofar as it provides that 'Contracting States shall allow such refugees a reasonable period and all the necessary facilities to obtain admission into another country.' Under Paragraph 1 of Article 33 of the Convention, moreover, there need be no concern that the United States would return a refugee unlawfully here to a country where the refugee would be persecuted.[3] This savings clause, so to speak, is further supported by the express terms of 243(h) of the Act, 8 U.S.C. 1253(h).[4] Section 243(h) provides
 
 
 7
 The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason.
 
 
 8
 That an alien may be barred from seeking protection under Article 32 by virtue of his being unlawfully in this country does not prevent him from obtaining relief under available provisions of our immigration laws, including not only 243(h), but also 203(a)(7) of the Act, 8 U.S.C. 1153(a)(7), referring to conditional entries.[5]
 
 
 9
 Judgment affirmed.
 
 
 
 [1]
 19 U.S.T. 6259, T.I.A.S. No. 6577. The Convention was made applicable to the United States by virtue of the United Nations Protocol Relating to the Status of Refugees (the Protocol), 19 U.S.T. 6223, T.I.A.S. No. 6577, advised by the United States Senate on October 4, 1968, approved by the President of the United States on October 15, 1968, effective November 1, 1968. Under Article 1 of the Protocol, except with respect to certain technical changes, the states parties to the Protocol undertook 'to apply articles 2 to 34 inclusive of the Convention . . .'
 
 
 [2]
 1. The Contracting States shall not impose penalties, on account of their illegal entry or presence, on refugees who, coming directly from a territory where their life or freedom was threatened in the sense of article 1, enter or are present in their territory without authorization, provided they present themselves without delay to the authorities and show good cause for their illegal entry or presence
 
 
 [2]
 The Contracting States shall not apply to the movements of such refugees restrictions other than those which are necessary and such restrictions shall only be applied until their status in the country is regularized or they obtain admission into another country. The Contracting States shall allow such refugees a reasonable period and all the necessary facilities to obtain admission into another country
 
 
 [3]
 1. No contracting States shall expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion
 
 
 [4]
 The Service proposes to return appellants to Hong Kong, and neither claims that he will be persecuted there
 
 
 [5]
 Section 203(a)(7), 8 U.S.C. 1153(a)(7) provides:
 (a) Aliens who are subject to the numerical limitations specified in section 201(a) shall be allotted visas or their conditional entry authorized, as the case may be, as follows:
 (7) Conditional entries shall next be made available by the Attorney General, pursuant to such regulations as he may prescribe and in a number not to exceed 6 per centum of the number specified in Section 201(a)(ii), to aliens who satisfy an Immigration and Naturalization Service officer at an examination in any non-Communist or non-Communist-dominated country, (A) that (i) because of persecution or fear of persecution on account of race, religion, or political opinion they have fled (I) from any Communist or Communist-dominated country or area, or (II) from any country within the general area of the Middle East, and (ii) are unable or unwilling to return to such country or area, on account of race, religion, or political opinion, and (iii) are not nationals of the countries or areas in which their application for conditional entry is made; . . ..